THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
CIVIL CASE NO. 2:10cv018

| | |
|---|---|
| **DEBORAH D. CLOER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 12] and the Defendant's Motion for Summary Judgment. [Doc. 21].

## I. PROCEDURAL HISTORY

The Plaintiff Deborah Cloer filed an application for a period of disability and disability insurance benefits, and Supplemental Security Income on September 28, 2006, alleging that she had become disabled as of July 6, 2006, due to mental impairments. [Transcript ("T.") 90]. The Plaintiff's application was denied initially and on reconsideration. [T. 48-53, 54-56, 57-59]. A hearing was held before Administrative Law Judge ("ALJ") John L. McFayden on April 13, 2009. [T. 19-43]. On June 15, 2009, the ALJ issued

a decision denying the Plaintiff benefits. [T. 8-18]. The Appeals Council accepted additional evidence, but denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-4]. The Plaintiff has exhausted her available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to

2

support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets

or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV. FACTUAL BACKGROUND

At the time of her hearing, Plaintiff was 51 years old. She testified that she had finished the eighth grade and later obtained a GED. She testified that she tried to attend college, but that each time she went to school she "had a nervous breakdown." [T. 23]. Her last work was at Farley Super Track, a gas station where she worked for three or four months. [T. 24].

At the ALJ hearing, Plaintiff testified that she lives with her sister because she cannot take care of herself and is "terrorized of living alone." She testified that she has a driver's license but that there are times when she

4

cannot drive. [T. 27]. Plaintiff reported that she has two to three "really really bad days" per month when she cannot get out of bed. She stated that she has no physical limitations. [T. 31].

With respect to activities of daily living, Plaintiff testified that she does light housework such as dusting and sweeping. [T. 31]. Plaintiff testified, however, that she is afraid to answer the phone and sometimes is afraid to go out in public. She shops once a month, but feels like others are looking at her. She does not watch television. [T. 32]. She testified that she cannot retain what she reads. She cannot cook and has difficulty concentrating due to repetitive thoughts. She reported that she had panic attacks at her last job. [T. 33].

Plaintiff's sister, Shirley Brooks, testified that Plaintiff was very depressed "most times" and could sometimes stay in bed all day. [T. 34-42]. She stated that Plaintiff could "hardly handle any stress at all." [T. 36]. Ms. Brooks testified that Plaintiff refuses to go out to eat and that when Ms. Brooks had visitors, Plaintiff stays in her room. Ms. Brooks stated that Plaintiff needs reminders to complete tasks and that she cannot retain what she has seen on television. [T. 36]. She further reported that conversations with her

5

children would upset her for a week at a time. Ms. Brooks stated that Plaintiff was too forgetful to be trusted with cooking. [T. 37].

The medical evidence of record indicates that Plaintiff has a long psychiatric history with a diagnosis of schizo-affective disorder. Plaintiff has a remote history of six psychiatric hospitalizations from 1984 to 1986. [T. 162, 154-165]. The record does not reveal any evidence of significant treatment for any physical or mental condition thereafter until 2005. Plaintiff's later psychological treatment is discussed in greater detail below.

## V.  THE ALJ'S DECISION

On June 15, 2009, the ALJ issued a decision denying the Plaintiff benefits. [T. 8-18]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since July 6, 2006, the alleged onset date. [T. 15]. The ALJ then determined that major depressive disorder, post-traumatic stress disorder and anxiety-related disorder were severe impairments. [T. 15]. The ALJ concluded that the Plaintiff's impairments did not meet or equal a listing. [T. 16]. He then determined that Plaintiff retained the residual functional capacity (RFC) to perform simple, repetitive jobs with things rather than people, at a medium level of exertion. [T. 16]. He found that Plaintiff had no past relevant work,

but that considering her age, education, work experience, and residual functional capacity, jobs existed in significant numbers in the national economy that Plaintiff could perform. [T. 17]. Accordingly, he concluded that the Plaintiff was not disabled from June 6, 2006 through the date of his decision. [T. 18].

## VI. DISCUSSION

On appeal, Plaintiff challenges the ALJ's assessment of her RFC, his evaluation of her credibility, and his weighing of the medical opinion evidence of record. As discussed below, the Court finds no error.

### A. The ALJ's assessment of Plaintiff's credibility followed applicable law and is supported by substantial evidence.

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) . . .which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir.1996). If there is such evidence, then the ALJ must then evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects his ability to work." Id. at 595. When assessing the credibility of a claimant's statements of pain or other symptoms, an ALJ is required to consider the (1) the nature, location,

7

onset, duration, frequency, radiation, and intensity of her symptoms; (2) the precipitating and aggravating factors of her symptoms; (3) the type, dosage, effectiveness, and side effects of her medication; (4) any treatment, other than medication, used to relieve her symptoms; (5) her functional restrictions; and (6) her daily activities. SSR 96-7p. Additionally, SSR 96-7p requires the ALJ to provide specific reasons to support his credibility finding. Id.

In the present case, Plaintiff contends that the ALJ erred in concluding that her subjective complaints were not entirely credible or supported by the overall medical evidence of record. Specifically, she argues that the medical records confirm her history of decompensating under stress. She further argues that the ALJ erred in failing to consider the testimony of her sister, which she contends corroborates her testimony.

Having found that the Plaintiff had severe impairments that reasonably could be expected to cause her stress and memory symptoms, the ALJ nevertheless concluded that Plaintiff's allegations were not entirely credible. There is substantial evidence in the record to support this determination. As the ALJ noted, there is ample evidence in the record to suggest that Plaintiff's medication stabilized her symptoms and allowed her to function, but that Plaintiff frequently failed to follow her prescribed medication regimen. An ALJ

8

may fairly draw negative inferences regarding credibility from a claimant's non-compliance with recommended treatment. McKenney v. Apfel, 38 F.Supp.2d 1249, 1259 (D. Kan. 1999) (citing Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991)).

Plaintiff further argues that the ALJ erred in failing to consider the corroborating testimony of her sister. The ALJ is not required to "evaluate in writing every piece of testimony and evidence submitted." Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam). Although the ALJ did not explicitly discuss this testimony, the record reflects that the ALJ considered "the entire record" in reaching his decision, and thus it may reasonably be inferred that Ms. Brooks's testimony was considered. [T. 15]. In any event, Ms. Brooks's testimony was largely redundant of Plaintiff's own complaints, and thus the ALJ committed no error in failing to address this testimony specifically in his decision. See Books v. Chater, 91 F.3d 972, 980 (7th Cir.1996).

**B.    The ALJ properly weighed the medical opinion evidence.**

Plaintiff next complains that the ALJ attributed less weight to the opinions of Dr. Marcus, Tassie Masters, and Dr. Nash than was proper under the regulations.

9

> The Secretary has provided guidelines for evaluating medical opinions regarding impairments and disability in regulation 20 C.F.R. § 404.1527. These ask the fact-finder to weigh: (1) the examining relationship (more weight to an examining than a non-examining physician); (2) the treating relationship (more weight to treating than consultative sources); (3) supportability (whether the report is based on detailed findings or merely conclusory); (4) consistency (internally and compared to the record as a whole); (5) specialization (whether the source is board certified or whose qualifications are suspect); and (6) "other factors" (unspecified).

Vest v. Astrue, No. 5:08-00219, 2009 WL 899418, at *5 (S.D. W.Va. Mar. 31, 2009).

Plaintiff was seen by Tassie Masters, ANP for psychotropic medication management from December 2006 through April 24, 2009. [T. 297-304, 320-26, 327-75, 438-41]. Just three months after she began treating the Plaintiff, Ms. Masters declared in a short letter that due to Plaintiff's decompensation over the past two years and the exacerbation of her symptoms under stress, she believed that Plaintiff "m[et] the criteria for a psychiatric disability." [T. 297].

The longitudinal medical evidence, however, contradicts Ms. Masters's opinion. For example, on December 5, 2006, Plaintiff told her psychiatrist that she had "almost no depressive symptoms" and was doing better. [T. 298].

10

On the same date, Ms. Masters encouraged her to contact Vocational Rehabilitation and start volunteering in order to quell the social anxiety that was stopping her from getting a job. [T. 306]. On December 11, 2006, it was noted that Plaintiff was getting good results from taking Depakote, and that she was getting good sleep and had a good appetite. [T. 301]. It was further noted that she had good insight and judgment. [T. 303].

Further, it is noted that Ms. Masters saw the Plaintiff "every four months for twenty minutes." [T. 322, 322-26]. Thus, by the time she prepared a Mental Residual Functional Capacity form (MRFC) on February 8, 2008 [T. 322-326], their treating relationship would have consisted of a total of only three or four twenty-minute encounters. Ms. Masters's MRFC assessment describes Plaintiff's response to treatment as "[m]eds have been fairly effective but there continues to be some instability." Yet Ms. Master went on to assess Plaintiff with the extreme limitation of no useful ability to function in fifteen of the twenty mental work criteria that she rated. She indicated that Plaintiff's mental impairments exacerbated her experience of back, leg/foot, and hand pain [T. 325], symptoms which are found nowhere else in the medical evidence of record. For these reasons, the Court concludes that the ALJ properly rejected Ms. Masters' opinion.

11

Next, Plaintiff proffers the opinion of consultative examiner Karen Marcus, Psy.D. [T. 376-94, 428-31]. The ALJ rejected Dr. Marcus's conclusions on two grounds: first, he determined that Plaintiff's scores on the MMPI-2 RF and IQ tests that Dr. Marcus administered were invalid; and second, because Dr. Marcus based her opinion on Plaintiff's subjective complaints rather than medically acceptable clinical and laboratory diagnostic techniques. [T. 14-15]. There is substantial evidence to support the ALJ's rejection of Dr. Marcus's opinion. The IQ tests administered resulted in a full scale IQ score of 67 [T. 383], a score which is entirely inconsistent with Plaintiff's prior academic performance. [T. 397-402, 411]. Furthermore, Dr. Marcus's report makes clear that she based her opinion on Plaintiff's subjective complaints [T. 378] (noting that "[Plaintiff] provided the information contained in this report"), which consist of allegations the ALJ had already determined to be not entirely credible. Accordingly, the ALJ's attribution of little weight to Dr. Marcus' opinion was proper.

Plaintiff also proffers the opinion of Dr. Nash, her primary care provider. Dr. Nash opined that Plaintiff's recurrent "bouts of depression" caused "long periods of inability to function" which rendered her permanently disabled. [T. 296]. There is, however, no reference to any medically acceptable clinical

12

and laboratory diagnostic techniques in support of this opinion. To the contrary, records of the four office visits that Plaintiff made to Dr. Nash after her alleged date of onset describe her as being "stable on Lexapro" [T. 193] and as responding well to counseling [T. 197]. Plaintiff was noted as having increased depression only for a period of two weeks in November 2006. [T. 215]. Records from the Balsam Center are consistent with Dr. Nash's observations. [T. 305-317]. The clinical findings and observations in Dr. Nash's treatment notes are inconsistent with the severe limitations suggested in his opinion. The ALJ therefore did not err in discounting Dr. Nash's opinion.

**C.   The ALJ's RFC assessment followed applicable law and is supported by substantial evidence.**

Plaintiff asserts that the ALJ erred by not explicitly discussing her impaired ability to deal with stress in his RFC assessment, leading to an RFC finding that does not account for limitations in stress tolerance. [Doc. 19 at 19]. This argument, too, must be rejected.

As Plaintiff correctly points out, State Agency consulting examiner Dr. Anthony Carraway, non-examining psychologist Dr. Tovah Wax, non-examining physician Dr. Susan Killenberg, treating therapist Tassie Masters, and consulting examiner Dr. Marcus all indicated varying limitations on her ability to deal with stress. For the reasons discussed above, the ALJ properly

13

disregarded the opinions of Ms. Masters and Dr. Marcus. Thus, the ALJ properly disregarded their findings in making his RFC assessment.

With respect Dr. Carraway, Dr. Wax and Dr. Killenberg, their findings and opinions regarding the Plaintiff's stress tolerance are accounted for in the ALJ's RFC findings. Dr. Carraway noted that Plaintiff's "stress tolerance appears to be moderately impaired." [T. 276]. Dr. Wax adopted Dr. Carraway's finding in concluding that the Plaintiff was capable of "SRRTs," or simple routine repetitive tasks. [T. 280]. Dr. Killenberg also quoted the limitations to which the Plaintiff cites, along with noting an additional note of a history of "psychosis when under great deal of stress," in an April 23, 2007 Case Analysis that concurred with Dr. Wax's January 2007 MRFC assessment. [T. 319]. The findings and opinions of these medical examiners are directly consistent with and constitute substantial evidence to support the ALJ's RFC finding for "simple, repetitive jobs with things rather than people." [T. 16]. As the evidence of record indicates that social interaction is the source of stress for Plaintiff, the ALJ's stated limitation on social interaction properly accounts for her limitations on stress tolerance. For these reasons this assignment of error is overruled.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 21] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 12] is **DENIED.**

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: November 29, 2011

Martin Reidinger
United States District Judge